# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW ANDREWS, | ) | |
| | ) | |
| | ) | Case No. 09-cv-6806 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff Andrew Andrews seeks judicial review of a decision denying his application for Disability Insurance Benefits ("DIB"). The parties have filed cross-motions for summary judgment. Mr. Andrews seeks a judgment reversing the final decision or remanding it to a new Administrative Law Judge ("ALJ") for review. Defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), seeks a judgment affirming the final decision. For the reasons set forth below, Mr. Andrews's motion for summary judgment is granted [dkt 26] and the Commissioner's cross motion for summary judgment is denied [dkt 28].

PROCEDURAL HISTORY

On September 5, 2007, Mr. Andrews filed an application for DIB, alleging disability beginning May 1, 2007.[1] On December 6, 2007 the claim was initially denied and was also

---

[1] R. 17.

1

denied upon reconsideration on February 5, 2008.[2] On March 7, 2008, Mr. Andrews then filed a written request for hearing.[3] On September 18, 2008, Mr. Andrews appeared and testified at a hearing before Maren Dougherty, Administrative Law Judge (ALJ), in Evanston, Illinois.[4] Stephanie Andrews, claimant's wife and James J. Radke, Vocational Expert ("VE") also testified.[5] The ALJ issued an unfavorable decision on June 3, 2009.[6] On September 21, 2009, claimant requested a review by the Appeals Council and was denied.[7] The ALJ's decision on June 3, 2009 stands as the final decision of the Commissioner.[8] On October 28, 2009, claimant filed this action, and both parties subsequently moved for summary judgment.

## STATEMENT OF THE FACTS

### A. Introduction

In a decision issued on June 3, 2009, the ALJ found that plaintiff has the following impairments which are severe in combination: anxiety disorder with panic attacks, depression, poor vision in the right eye, asthma, elevated liver enzymes, diabetes mellitus and tendonitis of the shoulders.[9]

A summary of the facts from the September 18, 2008 hearing before the ALJ include the following: Plaintiff is a former self-employed house painter who has worked from June, 1976 to May, 2007.[10] Plaintiff testified that his diabetes, at times, makes him feel like he is "out of

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] R. 28.
[7] R. 1.
[8] *Id.*
[9] R. 19.
[10] R.197.

body" and that it limits his ability to drive when it happens.[11] He also testified that he usually lies down until the "out of body" sensation passes.[12] Plaintiff also suffers from blindness in his right eye although it was caused in childhood.[13] Plaintiff testified that the pressure in his blind eye limits his ability to bend and stoop due to pain.[14] In a consultation with Matthew Goren, M.D., plaintiff was told that eye surgery would be needed to relieve the pressure that causes the pain.[15] Plaintiff testified that he has asthma and has trouble breathing, especially during hot weather.[16] He mentioned other factors that tend to aggravate his asthma such as: secondhand smoke, cat hair, dust, smoke from chimneys, and diesel truck fumes.[17] Additionally, plaintiff testified that he becomes fatigued from walking for more than two blocks and that he must nap 45 minutes to 1 hour each day, due to fatigue.[18] Finally, he claims to suffer from sharp pain in both of his shoulders while lifting items or performing household chores.[19]

Apart from his physical impairments plaintiff also suffers from anxiety and panic attacks caused by a variety of triggers like: fear of crowds, driving over bridges, driving on highways and flying.[20] At the hearing he testified to having a panic attack while waiting to checkout at a Costco store.[21] Before he could pay for his groceries, plaintiff left the store because he could not stand to be around people any longer.[22] In addition to having a fear of crowds, plaintiff was also

---

[11] R. 40-41.
[12] R. 42.
[13] R. 234.
[14] *Id.*
[15] R. 293.
[16] R. 51.
[17] R. 52.
[18] R. 191, 57, 58.
[19] R. 44-45.
[20] R. 61, 64, 65.
[21] R. 64.
[22] *Id.*

diagnosed with agoraphobia (a fear of leaving home) and depression.[23]

**B. Prescribed Medications**

Plaintiff is prescribed the following medications: Advair (for asthma);[24] Albuterol (a bronchial muscle relaxer that helps to relieve symptoms of asthma);[25] Flovent (used to prevent breathing difficulty, chest tightness, wheezing and coughing);[26] Lipitor (used to reduce the risk of heart attack and stroke and to control cholesterol levels);[27] Betimol (used to treat glaucoma and reduce pressure in the eye);[28] Captopril (used to treat high blood pressure and heart failure);[29] Metformin (used to treat type 2 diabetes);[30] Hydrochlorothiazide (used to treat high blood pressure and fluid retention caused by various conditions, including heart disease);[31] Flexotin (used for panic attacks and anxiety);[32] Prozac (used to treat depression, obsessive-compulsive disorder, some eating disorders, and panic attacks);[33] and Zoloft (used to treat depression, obsessive-compulsive disorder and panic attacks).[34] Plaintiff states that these prescriptions do not alleviate all of his conditions and that he struggles in hot weather to breathe and uses his inhalers up to four times a day.[35] Plaintiff also states that he suffers from a lack of sex drive, a side effect from the use of Flexotin.[36]

---

[23] R. 360.
[24] R. 186.
[25] *Id.*
[26] R. 343.
[27] R. 206.
[28] *Id.*
[29] R. 186.
[30] *Id.*
[31] R. 206.
[32] R.186.
[33] R. 186.
[34] R. 360.
[35] R. 51.
[36] R. 186.

4

## C. The treating and non-treating physician(s)

Plaintiff had a number of physicians he used to help treat his physical and mental impairments. The following is a list of his treating physicians: Daniel Greenberg, M.D.; Charles Harris III, M.D.; Ann McCormick, RN/APN; Donald Koziol, M.D.; Archana Verma, M.D. There were also non-treating physicians used predominately by the state to review and assess plaintiff's medical records and they include: Matthew Goren, M.D.; Sandra Hare, M.D.**;** Chirag Raval, M.D.; Richard Bilinsky, M.D.; Kirk Boyenga, M.D.; Charles Kenney, M.D.; Carl Hermsmeyer, P.H.D.

## D. Diagnostic tests and results

In 2001 at the Stroger Hospital of Cook County plaintiff had a biopsy of his liver and was diagnosed with fatty liver disease.[37] In 2003 he had a lung capacity test at Stroger Hospital that came back within normal limits but showed a peak flow rate of 430 and was expected to be 605; he was given Albuterol to control the asthma .[38] In 2007, plaintiff had a vision test performed by Dr. Greenberg who diagnosed plaintiff with ocular hypertension, corneal edema, and an absence of the lens in his right eye.[39] Later in 2007 he had a blood test performed at the Helping Hands Clinic.[40] In 2008, plaintiff had an exam of his left and right shoulders which revealed bilateral mild supraspinatus tendinosis and mild acromioclavicular osteoarthritis, but no rotator cuff tear.[41] Additionally, plaintiff had regular check-ups at the Erie Family Health Center for various

---

[37] R. 296.
[38] R. 24, 246.
[39] R. 24.
[40] R. 187.
[41] R. 393.

5

complaints and to adjust prescriptions as needed.[42] Plaintiff was also treated for his mental impairments at the Maine Center by Dr. Koziol.[43] Part of the treatment included the use of prescription drugs which were monitored for its efficacy with the prescribed amount(s) modified as needed.[44]

**E. The Listing Determination**

The ALJ determined that claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. 20 CFR 404.1425 and 404.1526.[45] In coming to her determination, the ALJ looked at the following listings: listing 1.02 to consider claimant's shoulder tendonitis; listing 2.02 to consider claimant's poor vision in his right eye; listing 3.03 to consider claimant's asthma; listing 5.05 to consider claimant's chronic liver disease; listing 9.08 to consider claimant's diabetes milletus; and listings 12.04 and 12.06 to consider claimant's mental impairments.[46]

**F. The RFC determination**

The ALJ determined that plaintiff had the residual functional capacity to lift 20 pounds occasionally, 10 pounds frequently, and sit, stand, or walk as required, but cannot work around concentrated amounts of pulmonary irritants or around hazards. Also, the ALJ found that plaintiff may not perform fine work that requires depth perception and is limited to unskilled tasks.[47] The ALJ determined that in activities of daily living, the claimant has no more than mild

---
[42] R. 246-285.
[43] R. 353-383.
[44] *Id.*
[45] R. 20.
[46] R. 20-21.
[47] R. 22.

restrictions.[48] She determined that in social functioning, the claimant has no more than moderate difficulties.[49] The plaintiff is unable to perform any past relevant work.[50] The plaintiff was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.[51] The ALJ also determined that based upon plaintiff's age, education, work experience, and residual functional capacity, that jobs exist in significant numbers in the national economy that he can perform.[52]

**G. The VE's testimony**

The ALJ then asked the VE if there were jobs in the economy that plaintiff could perform based upon the determined non-exertional limitations, plaintiff's vocational profile, and residual functional capacity.[53] The VE determined that plaintiff could perform the following jobs: ground maintenance worker, hand packer, mail clerk, stock clerk, and order filler.[54] He testified that there were 22,600 positions available in the 9 county region of northern Illinois.[55] When questioned, the VE testified that the packer job had steady and continuous production demands throughout the work day.[56] The VE also testified when questioned, that each of those jobs had inherent production demands that could be stressful relative to one's disability.[57]

STANDARD OF REVIEW

The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's

---

[48] R. 21.
[49] *Id.*
[50] R. 26.
[51] *Id.*
[52] R. 27.
[53] R. 27.
[54] *Id.*
[55] R. 90.
[56] R. 95.
[57] R. 97-98.

factual determinations are entitled to deference.[58] The Court examines the entire record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.[59] The Court will uphold the ALJ's decision "if it is supported by substantial evidence and is free from legal error."[60] Substantial evidence is evidence "'a reasonable mind might accept as adequate to support a conclusion.'"[61] Where reasonable minds differ over conflicting evidence, the Commissioner is responsible for determining whether a plaintiff is disabled.[62] However, the Commissioner's decision is not entitled to unlimited judicial deference.[63] An ALJ "must minimally articulate his reasons for crediting or discrediting evidence of disability."[64] The Court conducts a "'critical review of the evidence'" and will not uphold the ALJ's decision when "it lacks evidentiary support or an adequate discussion of the issues."[65] The ALJ, in his or her decision in a social security disability benefits case, is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion that the plaintiff is not disabled, so that a reviewing court may assess the validity of the agency's ultimate findings and afford the plaintiff meaningful judicial review.[66] If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded.[67]

---

[58] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).
[59] *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000).
[60] *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).
[61] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Powers*, 207 F.3d at 434.
[62] *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 2000).
[63] *Clifford v. Apfel*, 227 F.3d at 870 (7th Cir. 2000).
[64] *Id.*
[65] *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting in part *Clifford*, 227 F.3d at 869).
[66] *Steele v. Barnhart*, 290 F.3d at 941 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d at 872, 874 (7th Cir. 2000).
[67] *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d at 539 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d at 940 (7th Cir. 2000).

ANALYSIS

## A. Did the ALJ Improperly Evaluate the Medical Opinions of Record Under SSR 06-3p and 20 C.F.R. 404.1527(d)?

In an RFC assessment completed by Dr. Harris and nurse practitioner McCormick, they noted that plaintiff would need to take unscheduled breaks in an 8 hour workday lasting 20 min. every hour.[68] They also stated that plaintiff would be absent more than four days per month due to his impairments.[69] They noted that plaintiff displayed the following symptoms: shortness of breath, chest tightness, wheezing, episodic acute asthma and bronchitis, fatigue, and coughing.[70] They also noted that plaintiff was not capable of working at a low stress job.[71] They stated that plaintiff could sit for less than two hours and stand or walk for less than two hours in an eight hour workday.[72] They also stated that plaintiff could occasionally lift 10 pounds, but never 20 pounds. He could never twist, stoop, crouch, squat, and climb ladders or stairs.

The state physician, Dr. Bilinsky, in his RFC assessment determined that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds; stand or walk 6 hours in an 8 hour workday; sit 6 hours in an 8 hour workday; unlimited push and/or pull; no limitations in climbing, balancing, stooping, kneeling, crouching and crawling; limited in depth perception; no environmental limitations except to avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation.[73]

---

[68] R. 390.
[69] *Id.*
[70] R. 388.
[71] R. 389.
[72] R. 386.
[73] R. 309-315.

The ALJ found that plaintiff has the following impairments that are severe in combination: anxiety disorder with panic attacks, depression, poor vision in the right eye, asthma, elevated liver enzymes, diabetes mellitus, and tendonitis in the shoulders.[74] The ALJ rejected the assessments of Ms. McCormick which were also cosigned by her supervisor, Dr. Harris.[75] The ALJ found that these opinions, "were unsupported by objective findings that would yield such severe limitations."[76] Plaintiff argues that SSR 06-3p is the standard that applies given the length and number of times that Ms. McCormick examined plaintiff.

SSR 06-3p gives an ALJ the ability to consider an opinion not from a treating source-medical doctor. "It may be appropriate to give more weight to the opinion of medical source who was not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."[77] In *Dogan v. Astrue* the ALJ failed to follow the requirements of SSR 06 – 3p by not analyzing the report of a nurse practitioner.[78] "The ALJ has a duty to accept or reject this evidence based solely upon consistency."[79]

In this case, plaintiff argues that the ALJ did not explain why the opinions of Dr. Harris and Ms. McCormick are not supported by the record in the case. The ALJ stated, "although Ms. McCormick treated the claimant, Dr. Harris was a supervisor at the clinic and never examined the claimant."[80] Instead the ALJ gave some weight to the assessment offered by the state agency

---

[74] R .19.
[75] R. 26.
[76] *Id*.
[77] SSR 06-3p.
[78] *Dogan v. Astrue,* 2010 WL 2331394 at 8*.
[79] *Id.*
[80] R. 26.

which states the claimant has the residual functional capacity to perform less than a full range of medium work.[81] The ALJ noted that the state physician, Dr. Bilinsky, never had an opportunity to examine or even speak with the claimant.[82] Despite the fact the ALJ stated that Dr. Bilinsky was incorrect in his RFC assessment, plaintiff argues that the ALJ nonetheless relied on that assessment to create a "middle ground" and concluded that plaintiff was not disabled.[83] The basis of Dr. Bilinsky's opinion referenced a November 8, 2007 consultative examination report which showed no limitation on plaintiff's range of motion and that he could walk 50 feet without an assistive device.[84] Plaintiff argues that Dr. Bilinsky did not explain how a person with chronic fatigue and shoulder pain could lift 50 pounds occasionally and 25 pounds frequently.[85] The plaintiff further argues that a disability determination is reserved for the Commissioner rather than Dr. Bilinsky.

Ms. McCormick examined plaintiff 21 times from May 14, 2003 until April 10, 2008.[86] Her treatment notes reference plaintiff's asthma, elevated liver enzymes, dizziness, anxiety, shortness of breath, and shoulder pain and medications were prescribed for these conditions.[87] Under 20 CFR § 404.1527 (d) and SSR 06 – 3p, where a physician's opinion is not entitled to controlling weight the ALJ must consider (1) the length of the treatment relationship and the frequency of the examination; (2) nature and the extent of the treatment relationship; (3) supportability; (4) consistency; and (5) the specialization of the physician in determining what

---

[81] R. 25.
[82] *Id.*
[83] R. 25-26.
[84] R. 315.
[85] *Id.*
[86] R. 246-254, 337-338.
[87] *Id.*

11

weight to give the opinion.[88]

Based on these facts, plaintiff argues that Ms. McCormick's opinion was entitled to greater weight than the opinion of the state agency position Dr. Bilinsky. If the basis of Ms. McCormick's and Dr. Harris's opinion was unclear the ALJ should have contacted them for clarification. "The ALJ has a duty to conduct an appropriate inquiry for example by subpoenaing the physicians or submitting further questions to them."[89]

It is unclear whether the ALJ was using Dr. Bilinsky's opinion to bolster her determination that plaintiff was not disabled, or, as plaintiff contends, that the doctor's opinion in and of itself was the reason for the ALJ's determination that plaintiff was not disabled. However, there exists in this record significant differences between the state agency's assessment and the treating physician's assessment with no specific explanation as to why the ALJ chose one narrative over the other. We therefore remand back to the ALJ for further inquiry and clarification of Ms. McCormick's and Dr. Harris' medical opinions of record and how they bear on plaintiff's alleged disability.

**B. Did the ALJ improperly reject the opinion of Dr. Koziol?**

Similarly the ALJ rejected Dr. Koziol's opinion in favor of Dr. Bilinsky because Dr. Koziol examined plaintiff only four times during the relevant period and appeared to rely quite heavily on the subject of report of symptoms and limitations provided by the plaintiff.[90] This statement does not take into consideration the fact that plaintiff had previously sought care from the Maine Center (14 visits).[91] Dr. Koziol reported changes in plaintiff's mental status

---

[88] *Moss v. Astrue* 555 F. 3d 556, 561. (7th Cir.2009).
[89] *Barnett v. Barnhart* 381 F. 3d 664,669. (7th Cir. 2004).
[90] R. 26.
[91] R. 354.

throughout the four times he saw plaintiff.[92] Dr. Koziol noted anxiety, depression, and panic attacks.[93] Plaintiff argues that since Dr. Koziol was the treating psychiatrist and his progress notes are consistent with the noted symptoms his opinion was entitled to greater weight under 20 CFR section 404 .1527(d), than the opinion of state agency physician, Dr. Boyenga who did not examine plaintiff.[94]

The ALJ also rejected Dr. Koziol's assessment regarding "marked restrictions" in activities of daily living and social functioning because, "these conclusions are not defined or well supported by his findings."[95] The ALJ further stated that Dr. Koziol did not define "marked restrictions" and gave no examples of specific restrictions.[96] Plaintiff argues that the ALJ had a duty to re-contact Dr. Koziol if she was unclear about the term "marked restrictions". Plaintiff further argues that if the ALJ thought she needed to know the basis of medical opinions in order to evaluate them she had a duty to conduct an appropriate inquiry for example by subpoenaing the physicians and submitting further questions to them.[97]

For the same reasons stated in the previous section, we therefore remand back to the ALJ for further inquiry and clarification why Dr. Koziol's medical opinions of record should be disregarded.

## C. Did the ALJ improperly evaluate plaintiff's mental residual capacity under SSR 96 – 8p?

Under SSR 96 – 8P, the RFC assessment must include a narrative discussion describing

---

[92] R. 355-379.
[93] R. 355, 357, 373-75.
[94] *Bauer v. Astrue* 555 F. 3d 556, 561. (7th.Cir. 2009).
[95] R. 26.
[96] R. 21.
[97] *Barnett v. Barnhart* 381 F. 3d 669. (7th Cir. 2004).

how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).[98] In assessing an RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.[99] The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.[100] The RFC assessment must always consider and address medical source opinions.[101] If the RFC assessment conflicts with an opinion from a medical source the adjudicator must explain why the opinion was not adopted.[102] As the Seventh Circuit has stated, "the ALJ must build an accurate and logical bridge between evidence and the result."[103]

In this case, Dr. Koziol found that plaintiff is unable to function in a competitive work setting.[104] He also opined the plaintiff's mental impairments gave him "marked difficulties" in activities of daily living and maintaining social functioning.[105] The state physician, Dr. Boyenga, on the other hand, found plaintiff had no severe mental impairments.[106] The state agency's mental and physical RFC assessment concluded that plaintiff could perform less than a full range

---

[98] SSR 96-8p.
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Sarchet v. Chater* 78 F. 3d 305, 307 (7th Cir. 1996).
[104] R. 381.
[105] R. 26.
[106] R. 316.

14

of medium work.[107]

In coming to her determination, the ALJ rejected Dr. Koziol's assessment because his conclusion that plaintiff had "marked difficulties" in activities of daily living and maintaining social functioning was not defined or well supported.[108] The ALJ explained that "while the state agency opinion does not accurately reflect the claimant's residual funtional capacity, it does however, conclude the plaintiff is not disabled."[109] Further, the ALJ stated that "plaintiff's medication has been successful in controlling some of his symptoms and he tolerates his medication well."[110] But plaintiff argues that an improvement in plaintiff's condition is not the same as he is able to work. In other words, "the ALJ improperly ignored the fact that a person who has a chronic disease whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."[111]

By rejecting both of the opinions of the physicians, plaintiff argues that the ALJ had no "reasoned basis" for concluding that plaintiff had mild restrictions in activities of daily living and concentration, persistence, and pace; and up to moderate restrictions in social functioning.[112] "The medical expertise of the Social Security Administration is reflected in the regulations it is not the birthright of lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong."[113] "In rejecting the available medical record, the ALJ could not construct a "middle ground" without evidentiary support in the record."[114]

---

[107] R. 25.
[108] R. 26.
[109] R. 25-26.
[110] R. 24.
[111] *Bauer v. Astrue*, 532 F. 3d 609 (7th Cir. 2008).
[112] R. 21-22.
[113] *Schmidt v. Sullivan,* 914 F. 2d 117, 118 (7th Cir. 1990).
[114] *Bailey v. Barnhart,* 473 F. Supp.2d 822, 839 (N.D. Ill. 2006).

Again, as with the other treaters, there are significant differences between the disparate opinions in the assessments made by Dr. Koziol, who treated plaintiff, and Dr. Boyenga, who did not. The ALJ did not adequately explain or discuss why she rejected the treater's opinion. We therefore remand back to the ALJ for further inquiry and clarification of Dr. Koziol's medical opinions of record.

**D. Did the ALJ Improperly Evaluate Plaintiff's Physical Residual Capacity Under SSR 96–8p?**

The ALJ applied an RFC which concluded that plaintiff could work at the light unskilled level where plaintiff could lift 20 pounds occasionally 10 pounds frequently, stand or walk as required but that work around concentrated amounts of pulmonary irritants or around hazards and could not perform fine work that requires depth perception.[115] The ALJ stated that the objective findings in this case failed to provide strong support for plaintiff's allegations of disabling symptoms and limitations.[116]

SSR 96 – 8p requires that an RFC assessment must contain a thorough discussion and analysis of the objective medical evidence including the individual's complaints of pain and other symptoms and set forth a logical explanation of the effects of symptoms including pain in the individual's ability to work.[117] In this case, plaintiff argues that the ALJ did not assess any limitations on plaintiff's ability to perform light work. This despite plaintiff's testimony of fatigue, the need for naps every day for 45 minutes, and his inability to walk more than 2 blocks without resting for 5 minutes.[118] Plaintiff argues that since the ALJ found that plaintiff's

---

[115] R. 22.
[116] R. 23.
[117] *See also, Zurawski v. Halter,* 245 F.3d 881, 888-889 (7th Cir. 2001).
[118] R. 57, 58, 191.

impairments were severe in combination, she was obligated to consider the aggregate effect of the entire constellation of ailments including those impairments and isolation are not severe.[119] The ALJ did not discuss how plaintiff could perform light work for 8 hours as a mail clerk, stock clerk, or hand packer if he needs to nap for 45 minutes a day. The ALJ also did not explain how those jobs could be performed by plaintiff with shoulder pain and eye pain. Plaintiff argues that the ALJ cannot just credit limitations, she must also address how these limitations would impact an individual's abilities to sustain work.[120]

The ALJ found that plaintiff's impairments were severe in combination but concluded that he could perform work at the light level. The ALJ did not discuss how plaintiff's impairments would impact his ability to perform work at the light level. We therefore remand back to the ALJ for further inquiry and clarification on how plaintiff's limitations will affect his ability to perform light work.

**E. Did the ALJ Improperly Assess Plaintiff's Credibility Under SSR 96-7p?**

The ALJ points to a lack of objective medical evidence that would provide a basis for finding limitations greater than those determined in this decision.[121] The ALJ further states that Dr. Koziol "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant"...and "there are reasons for questioning the credibility of the claimant's subjective complaints as they are exaggerated in pursuing benefits."[122]

"An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely

---

[119] *Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003).
[120] *Richards v. Astrue,* WL 1443893 at *5 (7th Cir. 2010).
[121] R. 25.
[122] R. 26.

17

because they are not substantiated by objective medical evidence."[123] "The ALJ was obligated to analyze plaintiff's statements regarding his symptoms, and then specify why she accepted or rejected each statement."[124] "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed."[125]

Additionally, "it is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[126]

The ALJ did not cite to specific reasons for a finding of credibility other than pointing out that claimant's subjective complaints are exaggerated in pursuing benefits. We therefore remand back to the ALJ for further inquiry and clarification of why plaintiff's claims are not credible, especially in light of the medical evidence provided by the treating physicians.

---

[123] SSR 96-7p.[*See* also *Brindisi v. Barnhart*,315 F. 3d 783 (7th Cir 2003); reversing the ALJ because he "does not explain the weight given to the Brindisis' statements and does not support its determination with any evidence in the record."]
[124] SSR 96-7p.
[125] *Steele v. Barnhart*, 290 F.3d 942 (7th Cir. 2002).
[126] SSR 96-7p.

**CONCLUSION**

For the reasons set forth above, Andrews' motion for summary judgment is granted [dkt. 26]. We, therefore, remand the case to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**ENTERED: July 29, 2011**

_____
**UNITED STATES MAGISTRATE JUDGE**
Susan E. Cox